14402

KITTLES v. GENERAL AMERICAN LIFE INSURANCE CO.

(188 S. E., 784)

*Messrs. Thomas, Lumpkin & Cain*, for appellant,

*Mr. George Warren,* for respondent.

December 17, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was instituted in the Court of Common Pleas for Hampton County, for the recovery of the amount alleged to be due under a certain policy of insurance issued by Missouri State Life Insurance Company, now defunct, .on the life of Henry R. Kettles, in the face amount of $1,000.-00, wherein Mrs. Catherine E. Kettles was designated as beneficiary.

The complaint alleged that the policy was in full force and effect at the time of the death of the insured, which oc-

curred on December 24, 1934, but admitted that there was an indebtedness against it in the sum of $428.51, and asked judgment for the balance remaining, viz., $571.49.

The defendant, General American Life Insurance Company, by answer, admitted the issuance of the policy by the Missouri State Life Insurance Company, but alleged that such policy had become lapsed for the nonpayment of the premium and loan interest falling due thereon on April 24, 1934, during the lifetime of the insured, and that there was no equity remaining in the policy as of such date available for the payment of such premium or interest, or to purchase paid-up or extended insurance, and consequently all insurance and benefits created under the policy ceased and determined as of the date of lapse.

The defendant also alleged that the Missouri State Life Insurance Company had been adjudged by a Court of competent jurisdiction in the State of Missouri to be insolvent on August 28, 1933, and that all of its assets had been taken over by the superintendent of the insurance department of the State of Missouri, and that thereafter, on September 7, 1933, the said superintendent, pursuant to final decree of the said Court, sold all of the assets of the Missouri State Life Insurance Company, under a purchase agreement, to the defendant, upon the terms, conditions, and limitations therein set forth, which purchase agreement was thereafter duly approved by the Courts of Missouri.

The defendant also admitted that it agreed to carry out certain of the obligations of the Missouri State Life Insurance Company under the conditions, stipulations, and reservations therein set forth and agreed upon. It further admitted that it notified the insured of its assumption of liability under the policy involved herein, in accordance with the terms and reservations set forth in the said purchase agreement, but that no greater assumption was incurred. It also alleged that pursuant to the terms of the purchase agreement a policy lien of $166.00 was established against the

policy sued upon, and upon all other policies issued by the Missouri State Life Insurance Company, which indebtedness, together with the other indebtedness outstanding against this policy, exceeded the cash value thereof as of April 24, 1934, and that upon failure to pay the premium or loan interest due on that date, the said policy became lapsed and of no effect.

The case was heard before Hon. T. S. Sease, presiding Judge, and, by agreement of counsel, all questions of law and fact were submitted to the Court for its determination.

It was conceded, both by the plaintiff and the defendant, that the proceedings had and begun in the Courts of Missouri were binding upon and should be recognized and given effect by the Courts of this State.

Thereafter the Circuit Court rendered judgment, by order dated March 27, 1936, in favor of the plaintiff for $571.49, together with interest. From the judgment entered on the verdict, this appeal is taken.

The defendant raises six exceptions to the judgment of the Circuit Court, but all of the exceptions may be discussed together.

The facts are not in dispute. The only question that arises for our consideration is, whether the lien established against this policy, at the time of the assumption by the defendant of liability thereunder, is deductible from its cash value as of date April 24, 1934. It is conceded that if the lien was not deductible the policy was in force at the death of the insured. It is likewise true that if the lien was deductible the policy lapsed on April 24, 1934, during the life of the insured, and on the date of his death was without value.

On April 24, 1914, the Missouri State Life Insurance Company issued the policy in question on the life of Henry R. Kittles, in consideration of the payment in advance of an annual premium of $63.08, and of a like amount on or

before the 24th day of April in every year during the continuance of the policy. The policy further provided:

"All premiums are payable in advance, either at the Home Office of the Company in St. Louis, Missouri, or to an agent of the Company, upon delivery of a receipt signed by the President or Secretary and countersigned by the authorized agent. If any premium is not paid on the date when due, this policy shall cease and determine, except as hereinafter provided."

The policy also included provisions for paid-up insurance, optional with the insured, and for automatic extended insurance to be purchased or provided from such cash value as the policy might have.

The recurring premiums were paid as they matured up to, but not including the premium which fell due on April 24, 1934. In the meantime the insured had borrowed upon the sole security of the policy the sum of $330.00, which was evidenced by a policy loan agreement, and had also executed and delivered a premium lien note in the amount of $88.10 in settlement of the annual premium and loan interest falling due on April 24, 1933, which lien note fell due April 24, 1934. Both of these evidences of indebtedness drew interest at 6 per cent. per annum, payable in advance.

By due and proper proceedings had in the Circuit Court of the State of Missouri, within and for the city of St. Louis, it was adjudged on August 28, 1933, that the Missouri State Life Insurance Company was insolvent and in a hazardous condition, and it was further adjudged that all the assets of this company be vested in the superintendent of the insurance department of the State of Missouri, and his successors in office. Thereafter, with the sanction of the Court, the defendant entered into a purchase agreement with the superintendent of the insurance department, whereby all of the assets of the Missouri State Life Insurance Company were acquired by it upon the terms, conditions, and limitations therein set forth. Under the terms of this agreement, as

alleged in the answer of the defendant, a policy lien of $166.00 was established against the policy in question, which lien bore interest at a rate of 5 per cent. per annum. The agreement specifically included the provision that, "The said lien and interest shall be treated otherwise in all respects and with like effect as policy loan indebtedness under the terms of such policy."

Pursuant to the terms of this agreement, the defendant delivered to the insured a certificate of assumption, dated September 7, 1933, wherein it assumed and agreed to carry out the obligations of the Missouri State Life Insurance Company, under the policy involved herein, subject to the provisions of the purchase agreement. This certificate of assumption was accepted and retained by the insured and introduced in evidence by the plaintiff at the trial of the cause, together with the purchase agreement, and certain letters which will be later adverted to.

The amount of the cash surrender value and the full reserve on this policy, as of April 24, 1934, was $584.00. The total indebtedness outstanding against the policy, including the policy lien of $166.00, was the sum of $589.40, thus leaving an excess of indebtedness over the cash value, of $5.40. The premium lien note already referred to, which fell due on April 24, 1934, was not paid by the insured when due, nor within the period of grace; nor did he pay the interest falling due on April 24, 1934, or the annual premium of $63.08, maturing on that date; in consequence of which, according to the contention of the defendant, the policy lapsed in accordance with its terms, without value, and hence none of its nonforfeiture options could be operative.

The plaintiff admits that the defendant company, upon the nonpayment of the premium, the lien note, and the loan agreement, or the interest thereon, had the right to foreclose the loan in the manner prescribed by the policy, and that the calculation with respect to these items is correct. The sole contention advanced by the plaintiff in order to

sustain recovery is that there was sufficient equity remaining in the policy as of April 24, 1934, to continue the insurance in force to a date beyond the date of the insured's death; that is, she claims that the amount of the lien established against the policy is available for this purpose. The defendant contends that the equity was necessarily reduced by the amount of this lien, and that the deduction of the lien lapsed the policy.

The entire indebtedness outstanding against the policy as of the date of lapse, including the policy lien, was $589.40, and the cash surrender value of the policy was $584.00. There was, therefore, no equity remaining in the policy to continue it in force if the policy lien of $166.00 should be included as a part of the outstanding indebtedness. It is conceded, as already stated, that if the defendant had the right to so treat the policy lien, there was no equity available to continue the insurance in force.

The basis of the plaintiff's claim is found in certain literature prepared by the defendant and forwarded to the insured, which includes, among other statements pertaining to the purchase agreement and the obligations assumed by the defendant thereunder, the following: "Death claims payable during the next fifteen years will be paid without deduction of the lien (except interest thereon)." But, as we shall later show, this quoted excerpt presupposed the payment of current premiums on the policy, premium lien note, and interest on loan.

This statement was included in a general letter addressed by the president of the defendant company, "to the holders of policies and contracts issued, assumed, or reinsured by Missouri State Life Insurance Company," dated September 8, 1933, which was one day after the purchase agreement had been confirmed by the Missouri Court. The letter was printed as the first page of a pamphlet containing the entire purchase agreement, and in part contained this language:

"On account of deficiency in the assets required by this purchase, when written down to conservative current values, it has become necessary to place a lien against existing reserve values on all life insurance policies, other than registered policies, having such reserve values at the date of the Purchase Agreement. This lien will bear interest at the rate of 5% per annum, and can never be increased, except to the extent of accumulated interest thereon. Policy contracts charged with the lien will have the benefit of any profits made in the operation of Missouri State Life Insurance Company account, and will likewise have the benefit of the expected enhancement in the value of the assets acquired.

"A separate account for that Company will be maintained for fifteen years and the lien will be subject to reduction as provided in the Agreement at intervals during that period. At the conclusion of the fifteen-year period, the policies and contracts having any lien charge remaining will have the further benefit of a payment to be made for the business then in force.

"Death claims payable during the next fifteen years will be paid without deduction of the lien (except interest thereon).  *  *  *

"Formal assumption certificates will be issued to policyholders as rapidly as practicable, accompanied by a statement of the lien, if any, placed against each policy by the terms of the Purchase Ageement. *In the meantime premium payments will be received according to the terms of policy contracts as they now exist, and subject to existing indebtedness thereon, with any adjustment necessitated by lien computations to be made at a later date.*" (Italics added.)

It will thus be seen that in this letter the insured was duly notified that a lien would be established against his policy, and that premium payments would be received thereon, according to the terms of such policy, and that the policy would be subject to the existing indebtedness thereon. More-

over, the insured had only to refer to the copy of the purchase agreement which was furnished to him to apprise himself fully as to the terms and conditions under which the defendant assumed the obligations represented by the contract, and the limitations imposed thereon.

It is to be observed that the statement upon which the plaintiff relies is taken apart from all other conditions and provisions of the letter, and that it is found only in matters explanatory of the purchase agreement, and not in the purchase agreement itself. The plaintiff asserts that even if the premium, policy loan, and premium lien note and interest were not paid as required by the terms of the contract on April 24, 1924, the defendant company, nevertheless, was under the obligation to withold establishing and enforcing the said policy lien, or to consider the same in determining the net value remaining in the policy upon the date of lapse, if the death of the insured occurred prior to September 1, 1948, the termination of the fifteen-year period. This contention is tantamount to holding that any policyholder of the old Missouri State Life Insurance Company could refrain from paying premiums under his policy contract between September 1, 1933, and September 1, 1948, until the amount of the policy lien was exhausted, and if he died in this interim his beneficiary would be entitled to recover the full amount of the policy, less any loans that might exist thereon. This would be treating the policy lien as an asset instead of an outstanding indebtedness.

A proper construction of the documentary evidence in this case clearly shows that the poilcy lien cannot be regarded as as asset of the policy for the purpose of increasing its reserve, thereby giving it an additional value, applicable to the payment of its outstanding indebtedness. It was not available for this purpose. Payment of the lien was to be waived only in the event of a death claim within fifteen years, and prior to September 1, 1948, and provided only, if the current premiums were paid. This was a special bene-

fit offered to policyholders in the old company, and was evidently intended as an inducement to them to continue keeping their policies alive. Assuredly, under the evidence, the only method by which this could be done was by continuing the payment of the premiums. It was never intended that the waiver of the lien under the existing conditions noted could be converted by the policyholder at his option into the equivalent of cash, and by so doing subvert its real purpose and contractual meaning. The evidence does not support the plaintiff's contention.

The quoted excerpt from the letter upon which the plaintiff relies cannot be torn from its context—dissociated from what went before and from what followed it—without doing violence to its plain and obvious import and tenor. Nowhere in the agreement or in the correspondence was the insured told that he could cease paying premiums. On the contrary, he was definitely advised that the payment of premiums must be continued, and he was urged to pay them and not to allow his policy to lapse.

The purchase agreement, a copy of which was received by the insured, further provided:

"Every such lien, together with the interest thereon, will be deducted from any payment made by the New Company pursuant to the terms of each such policy or from any settlement thereon or from the value used to purchase or provide any paidup or extended insurance or to exercise any option provided by said policy, except that should the insured die before September 1, 1948, the New Company will, *if the policy be then in force in accordance with its terms as modified by the terms of this Agreement,* waive such lien in the payment of such death claim, subject, however, to the deduction of any accrued interest on the amount of such lien." (Italics added.)

By these words it was expressly stipulated that the lien established against the policy would be waived only in the event the policy was in force in accordance with its terms

at the time of the insured's death; and nowhere in the agreement do we find any modification or waiver of this essential condition.

The only way the policy could be continued in force in accordance with its terms would be to continue the payment of the premiums.

The insured's attention was particularly directed to the necessity of continuing the payment of premiums under his policy, if he desired to enjoy the protection it afforded, in a letter addressed to him by the defendant company under date of April 30, 1934, within the grace period. In this letter, the insured was specifically advised that a lien of $166.00 had been established against his policy, and that the lien, together with the other indebtedness, would equal the cash surrender value thereof; that there would be no balance left to provide for paid-up insurance, and for these reasons he was urged to pay the premium which fell due April 24, 1934. In that letter it was said:

" * * * Please do not make a final decision to discontinue premium payments until you fully consider the following important points.

"If you continue your policy in full force by paying premiums and any other items due, you will share in lien reductions resulting from future earnings and appreciation of assets from the very conservative value at which they were placed (Q-16, 38). If you do not continue your policy in full force, you will not be entitled to share in lien reductions (q-9).

"Death claims occurring before September 1, 1948, will be paid in full, without deduction of the lien, because the lien is insured (Q-3, 4, 30, 33).

"Increases in cash values resulting from premiums which are paid after September 1, 1933, will not be subject to restrictions, and you may use such values as you see fit (Q-19, 23, 24). If you do not find it possible to pay the full premium and any other items which may be due, we will be glad to

give you every assistance within our power to maintain your policy in force. * * * "

It clearly appears that the benefits to be derived within the fifteen-year period in the event of death were conditioned upon the continued payment of the premiums. The evidence indubitably shows that the insured was put upon notice as to this requirement beyond any reasonable doubt; and we do not see how the plaintiff or the insured could have reached any other conclusion under the evidence.

On June 14, 1934, the insured was advised that his policy had lapsed, and he was urged to submit application for the reinstatement thereof. He was also advised as to the amount necessary to cover the matured premium and loan interest.

As against the clear and unequivocal language thus employed by the defendant company, the plaintiff relies upon the isolated paragraph contained in the circular dated September 8, 1933, already referred to.

It is exiomatic that the intent and purport of a written contract or agreement is to be gathered from the contents of the entire agreement, and not from any particular clause or provision thereof.

The waiver by the defendant company of its right to deduct the policy lien should the insured die before September 1, 1948, is tied inextricably to the further condition that on the date of the death of the insured the policy must be in force in accordance with its terms. Any other construction of the purchase agreement and letters in evidence would abrogate the real intent of the entire transaction. There can be no doubt that the policy expired in accordance with its terms on April 24, 1934, because of the failure of the insured to pay the premium, the premium lien note, and the interest thereon falling due on that day.

In the case of *Bergholm v. Peoria Life Insurance Company of Peoria, Ill.*, 284 U. S., 489, 52 S. Ct., 230, 231. 76 L. Ed., 416, the United States Supreme Court said:

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. *Imperial Fire Ins. Co. v. Coos County,* 151 U. S., 452, 462, 463, 14 S. Ct., 379, 38 L. Ed., 231. As long ago pointed out by this Court, the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief. *Klein v. Insurance Co.,* 104 U. S., 88, 91, 26 L. Ed., 662; *New York Life Ins. Co. v. Statham et al.,* 93 U. S., 24, 30, 31, 23 L. Ed., 789; *Pilot Life Ins. Co. v. Owen* (C. C. A.) 31 F. (2d), 862, 866. And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles."

The doctrine thus announced has been consistently followed and applied by this Court, and the failure to pay premiums when due, in the absence of waiver, results in forfeiture. See *Donald v. Piedmont & A. Life Ins. Co.,* 4 S. C., 321; *Perkins v. Philadelphia Life Ins. Co.,* 93 S. C., 88, 76 S. E., 29; *Parry v. Southeastern Life Ins. Co.,* 95 S. C., 1, 78 S. E., 441; *Wood v. Southeastern Life Ins. Co.,* 107 S. C., 536, 93 S. E., 197; *Cantey v. Philadelphia Life Ins. Co.,* 166 S. C., 181, 164 S. E., 609.

It is also argued by the respondent that there is ambiguity in the terms and conditions of the purchase agreement and in the letters and literature sent to the insured by the defendant, when all of them are construed as a whole. We are unable to perceive the ambiguity. It appears definitely and unequivocally that the lien established against the policy was to be treated in all respects and with like effect as policy loan indebtedness under the terms

of the policy, except for the amount of the interest chargeable thereon. And the insured was clearly advised more than once that to keep the policy in force the premium must be paid. Therefore there is no room in this case for the application of the rule that where the terms of the contract are ambiguous, or susceptible of two reasonable constructions, that the Court will adopt that one which is more favorable to the insured.

The Court has carefully studied the entire record, together with the decree of the Circuit Court, and we cannot escape the conclusion that the judgment of the lower Court must be reversed, and judgment entered up in favor of the defendant.

The exceptions of the defendant to the decree of the lower Court are sustained.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham and Baker, concur.