RAYMOND B. HENDRICKS, RESPONDENT-APPELLANT, v. WASHINGTON NATIONAL INSURANCE COMPANY, APPELLANT-RESPONDENT.—236 S. W. 2d 358.

Kansas City Court of Appeals. Opinion delivered January 8, 1951.

*Brown, Douglas & Brown, Richard L. Douglas* for appellant.

*Boyd & Elliott* for respondent-appellant.

DEW, P. J.—This is an action brought by Raymond R. Hendricks, as assignee and trustee of Mary E. Johnson, widow of Emmett T. Johnson, to recover death benefits, penalty and reasonable attorneys' fees for vexatious refusal to pay, under a limited accident insurance policy issued by the defendant. A jury having been waived, the case was submitted to the court and a judgment rendered for the plaintiff for $2875, plus interest from November 4, 1946, $540, a total of $3415. Both parties have appealed on the grounds hereinafter more fully stated. By stipulation the appeals have been consolidated.

The material facts are not controverted. The policy was issued by the defendant as of August 29, 1942, to Emmett T. Johnson, the insured, a farmer, whose known age at the time was 63 years. Previous to the issuance of the policy, the insured had suffered the loss of the right eyeball. The beneficiary named in case of death is Mary E. Johnson, the widow who, by her written agreement, has, since the death of the insured, assigned all of her rights under said policy to the plaintiff Raymond B. Hendricks, as her assignee and trustee. The policy above described was in full force and effect at the time of the death of the insured.

On June 2, 1946, the insured was riding in and operating a farm tractor over his farm, and while crossing the railroad tracks of the Chicago, Burlington & Quincy Railroad, was instantly killed by the railroad train on said tracks. Thereafter, on June 18, 1946, a written

claim was made to the defendant by the widow for the death of said insured, in which she stated, among other things, that: "Insured was riding on and operating a farm tractor on or about the farm and crossing railroad track when tractor was struck and wrecked on crossing by raiload train". The amount therein claimed was $1150. Promptly thereafter the defendant mailed the widow its check for $287.50. She thereafter consulted counsel and the check was refused and returned to the defendant with a letter in which claim was made for $5750, half of which she offered to accept in settlement of the claim. Thereafter certain letters were exchanged between counsel for the beneficiary and representatives of the defendant, wherein the check for $287.50 was again remitted or tendered, and again declined and returned, and the respective theories of the liability of the defendant company were outlined and explained. At the trial, and merely for the purposes of expedition, it was agreed that if attorneys' fees were allowable in the case, $500 would be a reasonable amount. The assignment to the plaintiff was dated October 21, 1946, and suit was brought on November 2, 1946.

By his petition the plaintiff seeks to recover under the policy, $5000 for the death of the insured, plus accumulations of 5 percent thereof for each of three consecutive renewals ($750.), plus 10 percent for vexatious refusal to pay, plus $500 reasonable attorneys' fees, with interest. The theory of that claim is that the death was sustained in a "railroad accident" and is not reduced by an Over-Age clause of the policy, nor by an Impaired Risk clause thereof having to do with reduction of indemnities by reason of infirmities of the insured, such as the loss of an eye or leg, or being crippled or deaf.

The answer relies on a definition of "railroad accidents" appearing on Page Two of the policy, limiting same to fare-paying passengers in a railroad car; the definition of a "farm machine" accident appearing on the same page of the policy, limiting recovery to $1150; and two reducing sections (Eight and Nine), applying to age and impaired risk classifications, leaving the amount due to plaintiff $287.50, including renewal accumulations. The reply alleges knowledge on defendant's part of the age of the insured and his loss of one eye before issuance of the policy, and pleads estoppel as to application of Sections Eight and Nine.

The contention of the defendant is that the liability of the company for specific losses and indemnities set forth in the schedules thereof in Section One are subject to the limitations and provisions contained in the entire policy; that the accident in question was not a "railroad accident" because of provisions on Page Two, Part 1, which defendant claims define any "railroad accident" contemplated by the policy, which require that insured be at the time of the accident, traveling as a fare-paying passenger in a railroad car, and defendant further asserts that the accident in fact was a "farm vehicle accident",

defined on Page 2, Part Two, Clause (f) of the policy, caused by the "wrecking, disability, breaking or tipping over of any horse-drawn or motor-driven farm implement or farm machine (including farm tractors) while such implement or machine is being operated on or about the farm or public road or public highway;", under which classification as a "farm machinery accident" the beneficiary would be entitled to $1000 for loss of life under the schedule of specific losses shown in Section One, Part 2, reduced to one-half thereof ($500) by Section Eight of the policy, known as the "Under-Age and Over-Age Clause", subject to further reduction of one-half by Section Nine, known as "Impaired Risk Clause" because of the fact that the insured had previously suffered the loss of one eye, leaving a total benefit of $250, plus the accumulations for three consecutive renewals ($37.50), making a total of $287.50, which amount defendant has tendered and still tenders to the plaintiff.

The court found that the insured lost his life as the result of a "railroad accident", and that the plaintiff was entitled to recover under Section One of the policy under which, were it not for Section Eight, he would be entitled to a sum of $5750; that the provisions of Section Two of the policy (which we have previously stated limits recovery in "railroad accidents" to fare-paying passengers in railroad cars and defines farm implement accidents as hereinabove quoted) would not apply for the reason that such provisions apply only to nonfatal injuries under Section Two. The court further found that Section Eight applies and reduces the original amount of insurance by one-half because the insured at the time of his death had reached more than his sixtieth year. The court also found that Section Nine, providing for a further reduction of one-half "should the insured have suffered the loss of a limb or sight of an eye", etc., did not apply because it was ambiguous and to be construed against the insurer. The court further found against the plaintiff on the issue of an additional amount for vexatious refusal to pay. The judgment was for $2875, plus interest from November 4, 1946, ($540), a total of $3415, and costs.

The material provisions and general description and setup of the policy in question may be stated as follows: On the outside of the policy appear, in very large, bold type: "CAPPER'S Special Accident Policy", and "This Policy Provides Indemnity For Loss of Life, Limb, Sight or Time by Accidental Means, to the Extent Therein Limited and Provided". Diagonally across the last quoted words and in large, open, transparent type, there is stamped the following: "This is a Limited Policy Read it Carefully". At the top of Page 1, appears again, in large, bold type, the identifying words second above quoted. To the right thereof, by typewritten insertion, appear the name of the insured, age (63), and the name of the beneficiary. Below appears the general insuring clause to the effect that the named

company "does hereby insure the person whose name and address appears above * * * against death, dismemberment or disability resulting directly, independent and exclusive of all other causes, from bodily injury effected solely through external, violent and accidental means (hereinafter called such injury), subject to the limitations and provisions hereof, and sustained by the Insured only in the manner described in the following Parts. If such injury sustained by the Insured shall result within thirty days from date of accident in any one of the specific losses set forth below in Section One, the Company will pay the sum set opposite such loss as follows:" Immediately below the above appears the following:

| "SECTION ONE | SCHEDULE OF SPECIFIC LOSS AND INDEMNITIES | | | |
|---|---|---|---|---|
| FOR LOSS OF | PART 1 Railroad, Railway and Steamship Accidents | | PART 2 Automobile, Truck, Taxicab, Pedestrian, Farm Machinery and Other Specified Accidents | |
| | Column 1 Original Amount | Column 2 Fully Accumulated | Column 3 Original Amount | Column 4 Fully Accumulated |
| 1. Life...... x .......... x .......... 19."......... | $5,000.00 | $7,500.00 | $1,000.00 | $1,500.00 |

Diagonally across the face of the above schedule, also in large, conspicuous, open lettering, appear the words: "This is a Limited Policy Read It Carefully". Underneath the schedule is the clause adding 5 percent to the original amount payable for the foregoing specific losses for each consecutive renewal, not to exceed 50 percent.

Section Two is designated "Monthly Disability Indemnity". It reads in part: "If the Insured sustains such injury as hereinafter described which shall not prove fatal or cause specific loss as provided in Section One, but shall from the date of the accident, continuously and wholly disable and prevent the Insured from performing any and every duty pertaining to any business or occupation during the time of such disability, the Company will pay indemnity at the rate and for the period as follows: Under Part 1 at the rate of $100.00 a month not exceeding four consecutive months. Under Part 2 at the rate of $25.00 a month not exceeding four consecutive months". This concludes the first page of the policy. At the top of the second page, beginning with the same marginal spacing as the above words "Section Two", and evidently a continuation of Section Two, there appear these words: "Part 1 Railroad, Steamship, Street Car, Subway and Elevated Accidents". Under that designation, the policy reads: "If such injury shall be sustained: By the wrecking or disabling of any railroad passenger car * * * in or on which the Insured is traveling as a fare-paying passenger in a place regularly provided

for the sole use of fare-paying passengers, the Company will pay the indemnity provided in Column 1 of Section One, or as provided by Section Two''. Immediately below and in similar marginal spacing, appear the words: "Part 2. Automobile, Truck, Pedestrian, Airplane, Bus, Farm Vehicle and Animal, Cyclone, Bicycle, Burning Buildings, and other Specified Accidents''. It then reads: "If such injury shall be sustained * * * (f) By the wrecking, disabling, breaking or tipping over of any horse-drawn or motor-driven farm implement or farm machine (including farm tractors) while such implement or machine is being operated on or about the farm or public road or public highway; * * *''. Immediately thereafter appears Section Three, pertaining to hospital indemnity, Section Four, to medical reimbursement for nondisabling injuries, Section Five, ambulance fee, Section Six, elective indemnities, Section Seven, emergency indemnity. The above Sections Three to Seven, inclusive, evidently apply to nonfatal injuries referred to in the first paragraph of Section Two.

Next appears Section Eight, in bolder type than any of the foregoing Sections, entitled "Under-Age and Over-Age Risks'', which reads as follows: "The indemnities provided under Sections One, Two, Three, Six, and Seven of this policy shall apply only to persons between the ages of fifteen (15) and sixty (60). If, on the date of the accident, the Insured has not attained the age of fifteen (15) years, or has reached his sixtieth (60th) birthday anniversary, the indemnities under Sections One, Two, Three, Six, and Seven will be reduced one-half. The indemnities under Sections Four and Five will not be affected by this age limitation or reduction''. Section Nine, in the same bold type, follows, is entitled "Impaired Risks'', and reads as follows: "Should the Insured have suffered the loss of a limb, or the sight of an eye, or in other respects be crippled or deaf, the indemnities to which he would ordinarily be entitled by the provisions of this policy will be reduced one-half. When the indemnities are reduced on an Under-Age or Over-Age risk by the application of Section Eight, this Section Nine shall operate to further reduce the indemnities payable hereunder, to one-fourth of the original amounts stated in the policy under the Sections affected by Section Eight''.

Thus, it is seen that the policy, as respects the classification of injuries covered, is divided generally into two portions, Section One and Section Two. They differ materially and are independent of each other. Section One pertains only to specific losses, enumerated therein, including loss of life, arising from the character of accidents shown in the schedule in that Section, and for which specified lump sums in cash indemnities are payable. Section Two pertains only to nonfatal injuries that do not cause any of the specific losses enumerated in Section One, and which arise from accidents "hereinafter'' described, that is in Part 1 and Part 2 of Section Two, and for which injuries monthly indemnities described are payable.

It seems clear to us that that portion of the general insuring clause at the top of the policy, limiting recovery to injuries sustained "by the insured only in the manner prescribed in the following Parts", has reference to the category of any accidents described in any "Part" which may be applicable, whether appearing in Section One, "Part 1, Railroad, Railway, and Steamship Accidents", or in "Part 2 of Section One, Automobile, Truck, Bus, Taxicab, Pedestrian, Farm Machinery and Other Specified Accidents", or in either of the "Parts" under Section Two.

It is true the general insuring clause at the top of the policy is made "subject to limitations and provisions hereof", but the definition of a Railroad Accident and a Farm Implement Accident appearing under the monthly disability clause of Section Two, do not modify or restrict the classification of the accident, nor recovery therefor for loss of life under Section One, Part 1, as contended by defendant. In other words, deferring for the moment the consideration of the reduction Sections Eight and Nine, a person losing his life under the circumstances here shown would be entitled to recover under Section One, (Railroad, Railway, and Steamship Accidents), the sum of $5000 (Column 1), plus any accumulations due him for renewals (Column 2). The fact that the Insured was in a farm tractor while crossing a railroad track and when he was run into and instantly killed by a railroad train upon that track, would not make the accident any less a Railroad Accident under Section One. If, however, there be any reasonable doubt as to whether this fatal accident should be classified a "Railroad Accident" under Part 1 of Section One, or as a "Farm Machinery Accident" under Part 2 of Section One, or whether the classifications of Section One are modified by Section Two, Parts 1 and 2, the provisions would present an ambiguity, in which event the doubt should be resolved in favor of the insured and would permit the application of the first provision, or that which would be most favorable to the beneficiary since the policy, in our opinion, fairly warrants that disposition of the provisions in question. Boillot v. Income Guaranty Co., 102 S.W. 2d 132, 145.

Plaintiff contends that the court erred in applying Section Eight to his claim, reducing it one-half by reason of the age of the insured. The general insuring clause at the beginning of the policy makes the insurance thereunder "subject to the limitations and provisions hereof". As pointed out, there is no evidence of any attempt on the part of the insurer to conceal or otherwise camouflage that section, which appears plainly on Page 2 of the policy and in very bold, conspicuous type. It does not appear among the many "Standard Provisions" or "General Provisions" concluding the policy, but is prominently shown among the main provisions thereof on the second page. This manner and form of setting forth the provisions of that section, considered in connection with other warnings appearing in conspicuous parts of the policy as to the limited nature of the policy,

and the necessity of careful reading of the same, eliminate any consideration of trickery or misguidance of the insured. It is plainly provided in that section that—"If, on the date of the accident, the insured has * * * reached his sixtieth birthday anniversary, indemnities under Section One * * * will be reduced one-half". Plaintiff argues that the provision is ambiguous and should be strictly construed against the insurer as a repugnant and limiting clause. We believe this argument without merit. He also argues that a reasonable construction of the provision is that the indemnities would be reduced one-half if, "on the date of the accident the insured *shall* have reached his sixtieth birthday anniversary". He states that the policy shows and that the defendant admits that it knew of the age of the plaintiff when the policy was issued to him and therefore knew that insured could not *thereafter* reach his sixtieth birthday, and that the section could not apply to him, and defendant should be estopped from asserting that limitation clause. We know of no warrant by which the insured or this court may disregard the plain provisions of Section Eight, which fixed the portion of the scheduled indemnities to the insured by reason of his attained age. The trial court did not err in applying Section Eight to reduce the indemnity under Section One.

Defendant complains that the court erred in not also applying Section Nine to the claim of the plaintiff. The evident purpose of Section Nine is to reduce the indemnity otherwise due under the policy where the risk is increased because of the fact that insured has only one eye or has lost a limb, or is crippled or deaf. We deem plaintiff's contention a strained construction of the clause which reads "should the insured have suffered the loss of * * * an eye", to construe it to mean only that such impairment should occur after the issuance of the policy, in order to be applied. As in Section Eight, the insured under the provisions of Section Nine, was fully and fairly advised of the limitation which the policy places on his recovery due to his then existing infirmity. The clause is not ambiguous, nor is defendant estopped to apply it, nor is the court entitled either to disregard it or rewrite its tenor and effect. In this respect we find that the court erred in refusing to apply Section Nine to the amount otherwise due the plaintiff under the policy.

Recapitulating, plaintiff having met his death in a Railroad Accident, would be entitled to recover under Section One, Part 1, of the policy the sum of $5000 to be reduced by the provisions of Section Eight on account of his attained age, to $2500, which, in turn, should be reduced one-half under the provisions of Section Nine due to the impaired risk, or a total of $1250, to which should be added $187.50, because of the three consecutive renewals, making a total of $1437.50, with interest from November 4, 1946, and costs.

Under all the circumstances, we cannot hold, as a matter of law, that the defendant is guilty of vexatious delay, as claimed by plain-

tiff, and we rule that the trial court did not err in refusing to allow damages or penalties therefor.

The judgment is reversed and the cause is remanded with directions to enter judgment for the plaintiff for the sum of $1437.50, with interest from November 4, 1946 to December 29, 1949 (the date of the original judgment herein), such judgment to bear lawful interest from December 29, 1949, as provided by Section 140 of the Code of Civil Procedure, together with costs.