16665

SLOAN v. COLONIAL LIFE & ACCIDENT INS. CO.
(72 S. E. (2d) 446)

*Messrs. Harold C. Seigler* and *James Hopkins* of Columbia, *for Appellant,*

*Mr. S. Augustus Black,* of Columbia, *for Respondent,*

September 2, 1952.

FISHBURNE, Justice.

On July 17, 1940, the defendant, Colonial Life & Accident Insurance Company, in consideration of a premium paid to it by Charles Lee Sloan, executed to him a policy of accident insurance for the term of one year. The beneficiary named therein was the Estate of the Insured. The

policy was annually renewed thereafter for a period of about nine years.

On December 29, 1950, while the policy was still in force, Sloan died as a result of bodily injuries sustained by him in an automobile accident, and under circumstances covered by the policy. Due notice of loss and proofs of death were furnished. On refusal of the company to pay, this action was brought.

Plaintiff, who is administrator of the estate of the insured, sought to recover the full amount of insurance for loss of life by accident,—the sum of $3,000.00, with interest.

The insurance company by its answer, admitted that the insured died as the result of an accident covered by the terms of the policy, but denied liability for the full amount of $3,000.00. It alleged that the maximum principal sum payable under the policy issued by it to Charles Lee Sloan was the sum of $3,000.00, but that it is not liable for the payment of this amount because the policy expressly provides that between the ages of sixty-five (65) and sixty-nine (69), inclusive, the indemnities shown in the policy will be reduced one-half. It was further alleged by the defendant that at the time of his death, the insured had already attained the age of sixty-five, and was between the ages of 65 and 69; and that therefore the company's liability for payment of indemnities was accordingly reduced by one-half.

Under the terms and conditions of its policy, the defendant admitted its liability to plaintiff in the sum of $1,500.00, and tendered this sum in full payment, which offer was refused.

Plaintiff by reply, admitted that at the time of the death of the insured, he was between the ages of 65 and 69, but denied that the liability of the company thereby became reduced to one-half the maximum amount, and demanded judgment for the full sum of $3,000.00.

On trial, the issue was submitted to the county judge to construe the policy as a matter of law. The court rendered

judgment in favor of the plaintiff for only one-half the maximum principal sum,—$1,500.00, with interest. This appeal followed, and the only question presented by the appeal is the proper construction of certain paragraphs contained in the policy. This construction will, however, involve an examination of the entire contract.

We now refer to the policy:

Located in the middle of the first page, the death benefit is designated under "Section One" as $2,000.00, in bold, prominent, black type, and in figures substantially larger than any other figures contained in the policy. Immediately following, and as a portion of Part A, under the head "Specific Losses" appears the following provision:

"If such injuries shall result, within 60 days from date of accident and directly and independently of all other causes, in any of the losses enumerated in this Part, the Company will pay the amount set opposite such loss, but only one of the amounts so specified shall be paid for injuries resulting from one accident and shall include amounts payable under succeeding Parts and Sections.

|  | First Year Principal Sum | Annual Increase For Five Years | Value After Fifth Year |
|---|---|---|---|
| "For Loss of Life | $2,000.00 | $200.00 | $3,000.00" |

It will be noted that in accordance with the foregoing schedule, the value of the policy issued to the insured increased annually for five years, and its value after the fifth year is shown to be $3,000.00. There is nothing on the first page of the policy to indicate that there is any limitation of the liability of the company to pay the full amount of $3,000.00 for loss of life after the fifth year. On the contrary, the only condition mentioned is that such loss of life must occur within sixty days from the date of the accident, and must result directly and independently of all other causes, from the accident.

The provision we have quoted, comprises an unqualified promise to pay the beneficiary named in the policy, without

any limitation whatsoever, the sum of $3,000.00. It is not denied here that the insured suffered death by accident within sixty days from the date of the accident, and that his death was directly subject to and caused by such accident.

The defendant contends, however, that Paragraph 7 of the General Provisions contained on Page 3 of the policy, limits its liability to one-half of the benefits provided for, by reason of the fact that the insured at the time of his death had reached the age of sixty-five. Paragraph 7 provides, in small black type:

"The indemnities shown in this Policy shall apply only to Insureds between the ages of ten (10) and sixty-four (64) inclusive. Between the ages of five (5) and nine (9) inclusive, and between the ages of sixty-five (65) and sixty-nine (69) inclusive, the indemnities shown in this Policy will be reduced one-half."

It will be seen that no specific reference is made in this paragraph to Section One, Part A, found on the first page of the policy in big black type, in which the insurer stipulates without qualification, that the death benefit after the fifth year shall be $3,000.00. But despite this, if the policy contained no other provision relating to the question at issue, it would seem logical to hold that Paragraph 7 had direct reference to all indemnities provided for in the policy, and that if nothing else appeared, the judgment of the county court might be considered a correct construction. However, there is another very definite and applicable contract provision.

Paragraph 13 of the General Provisions, which follows Paragraph 7 in sequence, and which is the last paragraph in the policy on Page 3, provides:

"Yearly Accumulation of Benefits for Specific Losses: For each additional consecutive year after the expiration of the first year that this policy is in effect, without default in payment of premiums, the amount of benefits provided herein for death, dismemberment or loss of sight of insured as

provided in Section One, Part A, will increase at the rate of ten per cent (10%) per year of the original amounts until fifty per cent (50%) is thus added, and thereafter so long as this Policy shall remain in continuous force the insurance shall be for the said original amounts plus the accumulation."

As shown in the policy, the foregoing paragraph is introduced by letters black and conspicuous, far larger than the type used in Paragraph 7.

By reference to the foregoing paragraph 13, it will be seen that it, unlike Paragraph 7, makes specific reference to Section One, Part A, found on the first page of the policy, wherein the defendant promises to pay for the loss of life after the policy has been in force for five years, the sum of $3,000.00.

Referring again to Paragraph 13, it will be seen that the company without restriction, specifically agrees that for each additional consecutive year after the policy has been in force, the benefits will be increased in value at the rate of ten per cent per year of the original amounts, until fifty per cent is thus added, in consequence of which $1,000.00 at the end of the fifth year was to be added to the amount of $2,-000.00, thus making the total amount $3,000.00.

Not only this, but the company emphasized in this final paragraph of the policy, that there would be no reduction, by concluding with the following emphatic language: "* * * and thereafter so long as this Policy shall remain in continuous force the insurance shall be for the said original amounts plus the accumulation."No condition or limitation is to be found with reference to age. The assertion is direct and positive that after the policy has been in force for more than five years, and so long as the policy shall remain in continuous force thereafter, the insurance, with specific reference to Part A, Section One of the first page, shall be for the original amounts, plus the accumulation.

In our opinion, this final, forceful and explicit paragraph 13 so modifies and amends Paragraph 7 of the General Provisions as to make that Paragraph 7 ineffective to reduce the indemnity provided for loss of life in Part A, Section One. To say the least, it injects into the policy a patent ambiguity. To hold otherwise, would require that the court completely ignore Paragraph 13 and give no force and effect to its specific provisions.

Counsel for appellant and respondent invoke familiar and well recognized rules followed by the courts in the construction of insurance policies, which are applicable here.

It is axiomatic that the intent and purport of a written contract or agreement has to be gathered from the contents of the entire agreement, and not from any particular clause or provision thereof. *Kittles v. General American Life Ins. Co.,* 182 S. C. 162, 188 S. E. 784. As stated by the court in *Hardee v. Penn Mut. Life Ins. Co. of Philadelphia,* 215 S. C. 1, 53 S. E. (2d) 861, 863, quoting from *Haselden v. Standard Mutual Life Ass'n,* 190 S. C. 1, 1 S. E. (2d) 924:

"It is a cardinal principle of insurance law in this State, requiring no citation of authority, that a policy or contract of insurance is to be considered liberally in favor of the insured, and strictly as against the company. Stated more fully, the rule is, that where by reason of ambiguity in the language employed in a contract of insurance, there is doubt or uncertainty as to its meaning, and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the company, the former will be adopted."

And to the same effect, see *Harwell v. Mutual Ben. Health & Accident Ass'n.,* 207 S. C. 150, 35 S. E. (2d) 160, 161 A. L. R. 183; and *Walker v. Commercial Casualty Ins. Co.,* 191 S. C. 187, 4 S. E. (2d) 248.

The parties, of course, have the right to make their own contracts, and when such contracts are capable of clear interpretation, the court's province is con-

fined to the enforcement thereof. The court cannot exercise its discretion as to the wisdom of such contract or substitute its own construction for the agreement clearly entered into between the parties. However, "Printed insurance contracts prepared by experts in any respect ambiguous or capable of two meanings must be construed in favor of the assured." *Jennings v. Clover Leaf Life & Casualty Co.*, 146 S. C. 41, 143 S. E. 668, 670; *Parker v. Jefferson Standard Life Ins. Co.*, 158 S. C. 394, 155 S. E. 617.

Respondent's counsel refers to a provision in the introductory clause at the head of the policy on the first page, which reads as follows: "This policy provides indemnity for Loss of Life * * * caused by Bodily Injuries effected through Accidental Means, as herein limited and provided." It is contended that the last clause, "as herein limited and provided," should have put the insured on notice that he should thoroughly read his policy.

But in our opinion, the provisions of the policy here are, under the most casual construction, inconsistent and produce an ambiguity which renders applicable the rule that equivocal or doubtful language in the terms of a policy must be given the strongest interpretation against the insurer which it will reasonably bear.

Respondent calls to our attention, as being somewhat analogous, but in our opinion not controlling,—the case of *Hendricks v. Washington Nat. Ins. Co.*, Kansas City Ct. of Appeals, Mo., 236 S. W. (2d) 358, 362, wherein the court said:

"Plaintiff contends that the court erred in applying Section Eight to his claim, reducing it one-half by reason of the age of the insured. The general insuring clause at the beginning of the policy makes the insurance thereunder 'subject to the limitations and provisions hereof'. As pointed out, there is no evidence of any attempt on the part of the insurer to conceal or otherwise camouflage that section, which appears plainly on Page 2 of the policy and in very

bold, conspicuous type. It does not appear among the many 'Standard Provisions' or 'General Provisions' concluding the policy, but is prominently shown among the main provisions thereof on the second page. This manner and form of setting forth the provisions of that section, considered in connection with other warnings appearing in conspicuous parts of the policy as to the limited nature of the policy and the necessity of careful reading of the same.. eliminate any consideration of trickery or misguidance of the insured. It is plainly provided in that section that—'If, on the date of the accident, the insured has  *  *  *  reached his sixtieth birthday anniversary, indemnities under Section One * * * will be reduced one-half'. Plaintiff argues that the provision is ambiguous and should be strictly construed against the insurer as a repugnant and limiting clause. We believe this argument without merit.  *  *  *  We know of no warrant by which the insured or this court may disregard the plain provisions of Section Eight, which fixed the portion of the scheduled indemnities to the insured by reason of his attained age. The trial court did not err in applying Section Eight to reduce the indemnity under Section One."

Section Eight of the policy in the above case is somewhat similar to Paragraph 7 of the policy in the case at bar, and the court refers to the fact that it appears plainly on Page 2 of the policy, and not among the "General Provisions," appearing at the end of the policy. It is stated that Section Eight "is prominently shown among the main provisions" on the second page of the policy. And the court went on to hold that the paragraph in question had the effect of reducing the indemnity provided for in Section One of the policy by one-half if on the day of the accident insured had reached his sixtieth birthday. However, among other differences, the foregoing policy was devoid of any paragraph similar to our paragraph 13, and has no controlling relevancy here.

As hereinbefore indicated, if Paragraph 7 of the policy issued by the defendant in this case stood alone, although it

appears on the third page under the heading "General Provisions," the judgment of the trial court might be sustained, but here Paragraph 7 is followed by Paragraph 13 which creates a patent and manifest ambiguity. These sections are repugnant to each other.

In several jurisdictions there are statutes which require that certain kinds of policies be printed in a specified size of type. As stated in 29 Am. Jur., Sec. 128, Page 144:

"One of the most common provisions of this sort is that no policy of accident and health insurance shall be issued 'unless the exceptions   *   *   *   be printed with the same prominence as the benefits to which they apply, provided, however, that any portion of said policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy.' "

And to the same effect see 44 C. J. S., Insurance, § 254, pages 1030, 1031. However, no statute of this kind in this jurisdiction has been called to our attention by counsel for appellant or respondent.

For the reasons stated, the judgment of the County Court is reversed and the case is remanded with directions to enter judgment in favor of appellant for the sum of $3,000.00, with interest and costs.

Judgment reversed.

BAKER, C. J., TAYLOR, J., and E. H. HENDERSON, A. A. J., concur.

OXNER, J., dissents.

OXNER, Justice (dissenting).

I regret the necessity of dissenting.

Section 7 of the General Provisions in the policy is, in full, as follows:

"The indemnities shown in this Policy shall apply only to Insureds between the ages of ten (10) and sixty-four (64) inclusive. Between the ages of five (5) and nine (9) inclusive, and between the ages of sixty-five (65) and sixty-nine (69) inclusive, the indemnities shown in this Policy will be reduced one-half. Part D and E Section One and Part C Section Two however, will not be affected by this age difference."

Doubtless the foregoing section was inserted because of the difference in the accident rate between certain age groups. This provision cannot be said to be an arbitrary or unreasonable one. I think it is clear and unambiguous and is not modified or qualified by Section 13 of the General Provisions. Nor do I find any repugnancy between the two sections.

While I do not approve the arrangement in this policy, it is my view that the Court is not justified in refusing to give full force and effect to Section 7. A statute of the character referred to in the majority opinion undoubtedly serves a very wholesome purpose, but the General Assembly of this State has not enacted any legislation along this line.

I would affirm the judgment below.